# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| PNC Bank National Association, <br><br> Plaintiff, <br><br> v. <br><br> United States Army Corps of Engineers, *et al.*, <br><br> Defendants. | Case No. 2:13-CV-374 JVB |

## OPINION AND ORDER

Plaintiff PNC Bank, N.A. (f/k/a National City Bank, Successor Trustee of Trust #972 dated March 1, 1960) sued U.S. Army Corps of Engineers, Calumet River Basin Development Commission, Walsh Construction Company, and Austgen Equipment for damages arising out of the removal of its water drain pipe. According to the complaint, Walsh or Austgen, or both, were directly involved in the removal of the drain pipe as part of building a flood control levy on Plaintiff's land but the removal itself was designed by the Corps. Since then, Plaintiff's commercial property has experienced flooding during rainfalls. Plaintiff warned the defendants about the pipe and possible consequences if it were removed, but to no avail. In addition, although Plaintiff has repeatedly asked the Corps to replace the drain pipe and has even offered to do that itself, the Corps has refused to mitigate Plaintiff's situation. Hence this lawsuit. Plaintiff maintains that the removal of the pipe was unauthorized and violated federal and Indiana laws.

The Corps moved for judgment on the pleadings, which is reviewed under the same legal standard as motions to dismiss under Rule 12(b)(6). In other words, the question is whether

Plaintiff's complaint is supported by allegations that, if taken as true, would plausibly suggest that Plaintiff is entitled to relief. *See Bell Atlantic v. Twombley*, 550 U.S. 544, 555--56 (2007).

While the United States is generally immune from suit, the Federal Tort Claims Act ("FTCA") allows limited actions against the government. In this case, those limits doom Plaintiff's suit against the Corps. Thus, even if the Corps wrongfully removed the drain pipe and is now acting irrationally (as Plaintiff insists) by prohibiting Plaintiff from restoring the drainage on its property, Plaintiff cannot prevail against the Corps.

## I.

The Corps is a federal agency that plans and carries out public works projects including those relating to flood control of the nation's rivers and waterways. 33 U.S.C. §§ 540, 701a-1, 701b. In 1976, Congress authorized the Corps to perform "advanced engineering and design" for a flood control improvement project along the Little Calumet River, pursuant to Section 101 of the Water Resources Development Act of 1976, Pub. L. No. 94-587, 90 Stat. 2917, 2918 (Oct. 22, 1976). Ten years later, in 1986, Congress authorized the Corps to implement the project according to the agency's design plan, known as the Little Calumet River, Indiana Local Flood Protection and Recreation Project (the "Flood Control Project"), pursuant to Section 401 of the Water Resources Development Act of 1986. Pub. L. No. 99-662, 100 Stat. 4082, 4111, 4115 (Nov. 17, 1986). The Indiana General Assembly established the Commission to serve as the local sponsor for the Flood Control Project, as required by federal law, and to obtain "lands, easements, and rights-of-way" necessary to perform construction, operation and maintenance of the project on private property. Ind. Code. § 14-13-2, et seq.; Pub. L. No. 99-662, 100 Stat. at 4083.

Plaintiff (the Trust) is the owner of land adjacent to the north bank of the Little Calumet River, in Hammond, Indiana. (Compl. ¶ 7.) In April 2008, the Commission paid the Trust $299,000 in exchange for a Flood Protection Levee Easement (the "Permanent Easement") and a Temporary Work Area Easement (the "Temporary Work Easement") across a portion of Plaintiff's property. (*Id.* ¶ 26; Ex. 1.)

The Permanent Easement grants the Commission a "perpetual and assignable right and easement" in Plaintiff's property "to construct, maintain, repair, operate, patrol and replace a flood protection levee" in accordance with the Project. (Df.'s Ex. 1 at 6.) The Temporary Work Easement granted the United States and its contractors a temporary construction easement, for a period until six months after construction was completed, to use the land within the boundaries of the easement as a work area, including:

> [T]he right to move, store and remove equipment and supplies, and erect and remove temporary structures on the land and to perform any other work necessary and incident to the construction of [the Flood Control Project], together with the right to trim, cut, fell and remove therefrom all trees, underbrush, obstructions, and any other vegetation, structures, or obstacles within the limits of the right-of-way.

(Df.'s Ex, 1 at 7.)

Between May and October 2010, Walsh and Austgen performed work for the Project on Plaintiff's property pursuant to the Permanent and Temporary Work Easements. (Compl. ¶ 27.) Beginning in July 2010, Walsh and/or Austgen used heavy equipment to excavate a six-foot deep trench across the length of the easement for the purpose of installing a below-grade sheet pile wall. (*Id.* ¶ 28.) During the excavation of the trench, Plaintiff informed defendants that continued excavation of the trench would cause damage to a four-inch plastic drain pipe located about four feet below ground that intersected with the path of the levee easement. (*Id.* ¶¶ 3, 30.) Plaintiff also informed defendants that removal of the drain pipe would cause greater risk of flooding and

damage to its property and structures. (*Id.* ¶¶ 4, 31.) According to the Trust, the Commission, Walsh's superintendent and/or Austgen promised to avoid destruction of the drain pipe at least until Plaintiff has an opportunity to seek redress in court. (*Id.* ¶ 32.) Nevertheless, Walsh and Austgen proceeded with the trench excavation and removed the intersecting portion of the drain pipe. (*Id.* ¶¶ 5, 33.) Plaintiff alleges that the Corps directed the contractors to remove the drain pipe or failed to instruct them to avoid its destruction. (*Id.*)

## II.

Plaintiff's claims must be dismissed against the Corps because they are barred by the FTCA's discretionary function exception and the Flood Control Act.

The discretionary function exception to the FTCA's waiver of sovereign immunity bars "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2860(a). The purpose of the exception is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).

The exception has two requirements: the challenged action must involve "an element of judgment or choice" and it must be "based upon considerations of public policy." *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008). The exception does not apply "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow because the employee has no rightful option but to adhere to the directive." *United States v. Gaubert*, 499 U.S. 315, 322 (1991). "For a complaint to survive a motion to dismiss, it must

allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory scheme." *Id.* at 324--25.

The Corps admits that its engineers designed the Flood Control Project and that the design specifications included removal of the drain pipe within the boundaries of the Temporary Work Easement. (*See* DE 103, Df.'s Br. at 9.) As the Corps points out, the authority to make these decisions was delegated to the Corps by Congress. (*Id.* (citing public laws).) The Corps exercised its discretion and it was not constrained by any statute or regulation that would prohibit the Corps from deciding to remove the drain pipe.

While Plaintiff argues that the Corps was in fact constrained by Indiana trespass and conversion laws, this argument is misplaced. The FTCA exception to the immunity waiver shields the Corps from all liabilities, be they derived from state or federal laws, so long as the Corps exercised discretion and its decisions involve policy considerations. Here, they are clearly absolved under both prongs.

Plaintiff likens this case to *Reynolds v. United States*, 549 F.3d 1108 (7th Cir. 2008). There, the Court of Appeals for the Seventh Circuit held that a federal investigator's perjury fell outside the discretionary function because the investigators do not have discretion to perjure themselves as part of their official duties. Plaintiff thus argues that the Corps had no right to commit the violations of Indiana laws of trespass and conversion (for the sake of this argument the Court will accept the possibility that this may have happened). But the discretion of the Corps is not curbed by state laws; rather, "[t]he requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow' because 'the employee has no rightful option but to adhere to the directive." *United States v. Gaubert*, 499 U.S. at 322. Yet, Plaintiff has not shown any federal law that

5

mandated the Corps's actions in such a way that it had no discretion but to act only a certain way. If Plaintiff's theory were to be accepted, the discretionary function exception would lose its meaning because every claim that some law was violated would automatically overcome the exception.

Moreover, the Corps is shielded by the Flood Control Act. The Act provides that "[n]o liability of any kind shall attach to or rest upon the United States for any damages from or by floods or flood waters at any place." 33 U.S.C. § 702c. Plaintiff argues that in this case the Flood Control Act applies only to flood damage caused by the overflow of water from the Little Calumet River and that it does not apply to flooding on its property caused by rainfall after the Corps removed the drain pipe. But this argument is contrary to the language of the act: "no liability . . . from or by floods or flood waters at any place." In other words, rightly or wrongly, the statute protects United States from liability even when it's flooding solution in one area causes floods in another. Just as the Corps has no liability for opening a dam that has reached flood stage even if it knows that properties down the river will be flooded, *see Cent. Green Co. v. United States*, 531 U.S. 425, 431 (2001), so it is here, where the Corps made the decision that preventing a flood on the Little Calumet River may cause the flooding on Plaintiff's property.

Because the Court finds that the Corps has statutory immunities, it need not delve into Plaintiff's specific state law claims. Yet it's worth noting, that even there the Corps has the better argument. Plaintiff's trespass claim is precluded by the easement agreements that allowed the Corps or their contractors to be on Plaintiff's land and to "perform any . . . work necessary and incident to the construction . . . including the right to trip, cut, fell and remove therefrom all . . . obstructions, and any other . . . structures, or obstacles within the limits of the right-of-way." (Df.'s Ex. 1 at 7.) The same is true of the conversion claim. The drain pipe had been essential

and connected part of the real property for decades, thus becoming a fixture. Plaintiff therefore cannot claim that the Corps misappropriated its *personal* property, which is an element of conversion. Plaintiff concedes that it has no claim against the Corps for tortious interference with contract. Its civil action by a crime victim---which is founded on the theories of trespass and conversion---fails because it has no cause of action for trespass and conversion. And its § 1983 claim cannot survive because only persons can be sued under this provision, not governmental agencies.

Although the Corps prevails upon its motion, the Court is left with the impression that there's more than meets the eye. If Plaintiff's complaint is to be believed, perhaps there could have been more done to prevent damage to Plaintiff's property and perhaps, no matter on whose side the law is, it's still not too late.

The Court grants the U.S. Army Corps of Engineers motion for judgment on the pleadings (DE 102).

SO ORDERED on March 29, 2018.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE